IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TAMMY JO CRISS                                              PLAINTIFF

v.                      CIVIL NO. 15-2038

CAROLYN W. COLVIN, Commissioner
Social Security Administration                                   DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Tammy Jo Criss, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) benefits under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.   Procedural Background:**

Plaintiff protectively filed her current application for SSI on October 1, 2012, alleging an inability to work due to back problems. (Tr. 136, 159). An administrative video hearing was held on August 13, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 34-60).

By written decision dated November 1, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 19). Specifically, the ALJ found Plaintiff had the following severe impairments: degenerative

1

disc disease/facet arthrosis of her lumbar spine. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 19). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b). (Tr. 19). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a waiter/waitress, a cashier, and a fast food worker. (Tr. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 27, 2015. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 8, 9).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

At the time of the administrative video hearing held before the ALJ on August 13, 2013, Plaintiff was thirty-nine year of age, and testified that after receiving a formal education until the twelfth grade she obtained a general equivalency diploma. (Tr. 39-40). The record reveals that Plaintiff never worked outside of the home.

The medical evidence pertinent to the relevant time period reflects of the following. On October 4, 2012, Plaintiff was seen at the Clarksville Medical Group by Dr. John C. Dunham. (Tr. 208). Plaintiff presented for a follow-up for her back pain due to degenerative disc disease, and a herniated disc of the lumbar spine. Dr. Dunham noted that prednisone helped some, and that Plaintiff had undergone three epidural steroid injections. Plaintiff was

2

noted as "doing great" until the third epidural steroid injection when she developed headaches and needed a blood patch. Dr. Dunham noted Plaintiff had sciatica in the left lower side. Upon examination, Plaintiff had a negative straight leg raise, and peripheral, motor and neurosensory exams were normal. Plaintiff was noted to have tenderness along the spine and hips. Dr. Dunham recommended another MRI of the lumbar spine, as Plaintiff was noted to have markedly worse pain after the blood patch.

On October 15, 2012, Plaintiff underwent a MRI of the lumbar spine. The impression states as follows:

> probable interval resolution of previously seen disc herniation at the level of L5-S1 on the left with residual bulging disc in this area. Otherwise, stable examination.

(Tr. 253).

On October 30, 2012, Plaintiff was seen by Dr. Dunham for a follow-up of the MRI of her lumbar spine. (Tr. 252). Plaintiff reported persistent radiculopathy of the left lower extremity. Plaintiff reported that the pain was a little better but was still limiting. Plaintiff reported that she might be able to sit for twenty minutes, and that she could not lift more than five pounds. Dr. Dunham counseled Plaintiff about appropriate ergonomics with her back in sitting and lifting, and that she should not bend over. Dr. Dunham noted that the MRI revealed a resolution of the left-sided L5-S1 disc herniation, and a subtle residual disc bulge. Dr. Dunham found that Plaintiff had multilevel disc disease without spinal stenosis, or neuroforaminal compromise. After examining Plaintiff, Dr. Dunham recommended a CT myelogram.

On November 9, 2012, Dr. Stephen A. Whaley, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl; and that manipulative, visual, communicative or environmental limitations were not evident. (Tr. 66-69)**.**

On December 17, 2012, Dr. Dunham noted that a CT myelogram of the lumbar spine did not reveal the cause of Plaintiff's dramatic radiculopathy. (Tr. 251).  Dr. Dunham indicated that he would refer Plaintiff to a neurologist once he knew which specialist was in Plaintiff's insurance network.

On January 11, 2013, Plaintiff underwent an examination by neurologist, Dr. Janice M. Keating.  (Tr. 255-259).  Plaintiff reported chronic back pain that radiated to the knee of her left leg and sometimes into the right hip.  Plaintiff reported that it hurt more to sit.  After examining Plaintiff, Dr. Keating diagnosed Plaintiff with low back pain and possible left lower extremity radiculopathy.  Dr. Keating noted that Plaintiff's decreased deep tendon reflex in the left heel was the only objective finding.  Dr. Keating also noted that Plaintiff's examination was difficult due to breakaway weakness and some psychogenic overlay due to pain.  Dr. Keating indicated that Plaintiff's symptoms "certainly seem out of proportion to these minimal findings."  Dr. Keating recommended that Plaintiff undergo NCV/EMG studies.

On January 26, 2013, Dr. Bill F. Payne, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty

4

pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; that Plaintiff could occasionally climb, balance, stoop, kneel, crouch, or crawl; and that manipulative, visual, communicative or environmental limitations were not evident. (Tr. 76-78)**.**

On June 5, 2013, Plaintiff was seen for her bulging disc and backbone. (Tr. 262-266). Janet R. Canada, APN, recommended that Plaintiff undergo physical therapy.

### **III.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.

Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(C). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 416.920.

**IV.   Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ failed to develop a full and fair record; 2) the ALJ erred in determining Plaintiff's credibility; 3) the ALJ erred in determining Plaintiff's RFC; and 4) the ALJ erred in determining Plaintiff could perform other work in the economy.

**A.    Full and Fair Development of the Record:**

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is

independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the record consists of an October 15, 2012, MRI of Plaintiff's lumbar spine, two RFC assessments completed by non-examining medical consultants, and Plaintiff's medical records which include the examination by Dr. Keating in January of 2013. After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B.     Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is

that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record reveals that Plaintiff was able to take care of her daughter, to perform some household chores with breaks, to prepare simple meals, to take care of her personal needs, to drive, to shop for groceries, to attend church, and to spend time talking to others. (Tr. 174-181). In making a credibility determination, the ALJ also pointed out that Plaintiff failed to follow the medical recommendations of her treating and examining physicians. Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."), 20 C.F.R. § 416.930(b).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity during the time period in question. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### C. ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The

United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC." Id.

In finding Plaintiff able to perform light work, the ALJ considered Plaintiff's subjective complaints, the medical records of her treating and examining physicians, and the evaluations of the non-examining medical examiners. After reviewing of the record, the Court notes that the ALJ failed to address Dr. Dunham's opinion that Plaintiff should "never bend over," which appears to fall under the postural definition of stooping.[1] (Tr. 252). While the ALJ should have discussed this limitation when determining Plaintiff's RFC, in this case, the failure to specifically address this limitation is harmless because two of the jobs Plaintiff was found able to perform do not require the ability to stoop, crouch, crawl, or kneel.[2] Furthermore, subsequent medical records which include an examination by a neurologist in January of 2013, do not include this limitation. Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### D. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set

---

[1] Stooping is defined as a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist. S.S.R. 83-10 (S.S.A), 1983 WL 31251 * 6 (1983).

[2] The ALJ determined Plaintiff was able to perform the jobs of waitress and cashier which do not require stooping to perform the job. See DICOT §§ 311.477-030, 211.462-010 at www.westlaw.com.

9

forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a cashier and a waitress. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.   Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of November, 2015.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE